Jeanette DAVITON; Candi Daviton–Sciandra, Plaintiffs–Appellants,

v.

COLUMBIA/HCA HEALTHCARE CORPORATION, dba San Leandro Hospital, Defendant–Appellee.

No. 98–16698.

United States Court of Appeals, Ninth Circuit.

Rehearing En Banc Granted June 1, 2000

Argued and Submitted En Banc Sept. 20, 2000

Filed March 1, 2001

J. Kendrick Kresse, California Center for Law and the Deaf, San Leandro, Cali-

fornia, for appellants Jeanette Daviton and Candi Daviton–Sciandra.

Stephen W. Parrish, Foley & Lardner, San Francisco, California, for appellee Columbia/HCA Healthcare Corporation, dba, San Leandro Hospital.

Before: SCHROEDER, Chief·Judge, KOZINSKI, TROTT, T.G. NELSON, HAWKINS, TASHIMA, THOMAS, SILVERMAN, GOULD, PAEZ, and BERZON, Circuit Judges.

PAEZ, Circuit Judge:

Plaintiffs Jeanette Daviton and Candi Daviton–Sciandra (together, "the Davitons") appeal the dismissal, under Fed. R.Civ.P. 12(b)(6), of their complaint for disability discrimination. The district court determined that plaintiffs' claims were time-barred and that the statute of limitations was not tolled during the time they pursued an administrative complaint for the same wrong with the Office of Civil Rights ("OCR") of the United States Department of Health and Human Services against the same defendant, Columbia/HCA Healthcare Corporation dba San Leandro Hospital ("the Hospital"). The district court reached this conclusion without applying the three-part test required under California's doctrine of equitable tolling, deciding as a matter of law that the doctrine did not apply because "plaintiffs' complaint to the OCR was not designed to grant the same remedies as their current action[.]" No. C–98–1061 FMS, 1998 WL 474154, at *2 (N.D.Cal. Aug. 5, 1998).

We agreed to hear this case en banc in the first instance to resolve an apparent conflict between two of our decisions regarding the application of California's equitable tolling doctrine. For more than twenty years, the standard for equitable tolling under California law has been "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Addison v. State of California*, 21 Cal.3d 313, 319, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). In *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir.1993), we articulated and applied the requirements of equitable tolling as formulated by the California courts. In *Fobbs v. Holy Cross Health System Corporation*, 29 F.3d 1439 (9th Cir.1994), however, we added a "threshold" requirement that a plaintiff seek the same *remedies* (not merely relief for the same *wrong*) in each forum before we will apply California's equitable tolling rules. The district court here relied on *Fobbs*.

We conclude that *Cervantes* properly sets forth the California law on equitable tolling and overrule *Fobbs* to the extent it articulates an alternate version of the doctrine. As the district court relied on *Fobbs* rather than *Cervantes*, we reverse the district court's ruling. We remand to permit the Davitons to offer evidence supporting application of California's equitable tolling doctrine to their claims during the time they pursued an administrative complaint with the OCR against the same defendant for violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The district court will then be able to apply the mandatory three-part test for equitable tolling and determine the appropriate scope of its application.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Both Candi Daviton–Sciandra and her mother, Jeanette Daviton, are deaf. On August 8, 1996, Ms. Daviton experienced severe abdominal pain, so her daughter brought her to the San Leandro Hospital emergency room. The Hospital refused to authorize payment for a professional sign language interpreter to assist in the emergency room. Ms. Daviton–Sciandra

---

1. The factual summary is taken from the complaint. We take the Davitons' allegations as true and construe them in the light most favorable to plaintiffs. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

agreed to register her mother as a patient only after she requested that an ER nurse arrange for an interpreter and was led to believe one would arrive in about an hour.

During Ms. Daviton's emergency admission and treatment at the Hospital, "language and communication barriers," as defined in California Health & Safety Code section 1259,[2] existed between the Hospital staff and Ms. Daviton. Members of the Hospital staff attempted to communicate with Ms. Daviton through another staff member who was not qualified to interpret. The Hospital staff knew or should have known that this staff member was not qualified and that a sign language interpreter was needed for effective communication between Hospital personnel and the Davitons.

The Hospital was not prepared to provide a qualified interpreter for emergency health care purposes and had no established procedure for effective communication with deaf individuals in these circumstances. The Hospital shifted its responsibility to plaintiffs. Ms. Daviton–Sciandra did not willingly volunteer to interpret, and Ms. Daviton did not ask

the Hospital to rely on her daughter rather than on a qualified interpreter. Ms. Daviton–Sciandra was pressed into service, however, and used her "fluent sign language skills, lip reading skills, generally understandable speech and residual hearing."

On February 7, 1997, plaintiffs filed a complaint against defendant with the OCR, alleging that defendant discriminated against them on the basis of their deafness. The OCR notified the parties by letter dated September 18, 1997, that it was closing the case after finding that the Hospital had violated various section 504 regulations, including 45 C.F.R. section 84.52(c) and (d),[3] by failing to provide plaintiffs with auxiliary aids where necessary to afford them an equal opportunity to benefit from the Hospital's services.

On March 17, 1998, plaintiffs filed their complaint in the U.S. District Court for the Northern District of California, asserting five claims: (1) violation of section 504; (2) violation of California Civil Code sections 54 and 54.1 (the Unruh Act);[4] (3) violation of California Civil Code sections 51 and 52 (also part of the Unruh Act);[5]

---

**2.** California Health and Safety Code section 1259(b)(2) provides in relevant part: " 'Language or communication barriers' means: . . . (B) With respect to sign language, barriers which are experienced by individuals who are deaf and whose primary language is sign language."

**3.** Section 84.52(c) provides for emergency treatment of the hearing impaired and states, "A recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." The Department of Health and Human Services' Analysis of Final Regulation adds that "[a]lthough it would be appropriate for a hospital to fulfill its responsibilities under this section by having a full-time interpreter for the deaf on staff, there may be other means of accomplishing the desired result of assuring that some means of communication is immediately available for deaf persons needing emergency treatment."

Section 84.52(d)(1) requires a recipient to "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking

skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." Subsection (3) states "auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision."

**4.** California Civil Code section 54 declares that individuals with disabilities "have the same right as the general public to the full and free use of . . . medical facilities, including hospitals. . . ." Section 54.1 entitles individuals with disabilities "to full and equal access, as other members of the general public, to . . . hospitals, . . . subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Section 54.1 further makes violation of the Americans With Disabilities Act of 1990 ("the ADA") a violation of that section.

**5.** Section 51 of the Civil Code declares "[a]ll persons within the jurisdiction of this state" to be free and equal, regardless of, among other things, disability, and guarantees their right to "full and equal accommodations, advantages, facilities, privileges, or services in

(4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. They sought general compensatory damages according to proof not to exceed $100,000; up to three times the total of their actual damages; and reasonable attorneys' fees and costs of suit.

Defendant moved to dismiss the action as time-barred and on the separate ground that Ms. Daviton–Sciandra did not state a claim for relief because she was not a recipient of the Hospital's services. Plaintiffs did not dispute the applicability of a one-year statute of limitations. They argued instead that the limitation period was tolled during the time they pursued their OCR complaint.

Quoting *Fobbs*, the district court stated that this circuit interprets California's equitable tolling doctrine as requiring that "the prior legal action ... be 'designed to address the same wrongs and grant the same remedies' " as the later legal action. 1998 WL 474154, at *2 (quoting *Fobbs*, 29 F.3d at 1445–46). The district court observed that the OCR did not provide for monetary relief to a complainant, and plaintiffs did not seek in their federal action the "provision of services, the termination of Federal financial assistance to the hospital, or any of the other remedies that could be provided by OCR procedures." *Id.* (citing 45 C.F.R. § 84, App. A). The court concluded that plaintiffs' complaint to the OCR was not "designed to grant the same remedies" as the lawsuit and that under California's doctrine, the OCR proceeding did not toll the limitations period. *Id.*[6] Plaintiffs' complaint was thus time-barred, and the district court granted the motion to dismiss and ordered judgment entered for the Hospital.[7]

all business establishments of every kind whatsoever." A violation of the ADA also violates section 51. Civil Code section 52 provides, among other things, for up to a maximum of treble damages and attorneys' fees upon a finding of liability under section 51 or 51.5.

**6.** Because we conclude that the precise relief available in the OCR proceeding is not pertinent to the equitable tolling issue here, we do

## JURISDICTION AND STANDARD OF REVIEW

■ We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal of a complaint on statute of limitations grounds. *See Ellis v. San Diego*, 176 F.3d 1183, 1188 (9th Cir. 1999).

## DISCUSSION

■ "The Supreme Court has clearly held that in the absence of a federal statute of limitations for claims arising under the Civil Rights Acts of 1866 and 1871, the controlling statute of limitations is the most appropriate one provided by state law." *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir.1987) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (section 1981 claim)). Along with the limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so. *Board of Regents v. Tomanio*, 446 U.S. 478, 486–87, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (no federal policy such as deterrence, compensation, uniformity, or federalism offended by applying New York tolling rules to determine timeliness of section 1983 action).

■ We have held that California's one-year statute for personal injury claims, Code of Civil Procedure section 340(3), applies to claims under 42 U.S.C. section 1983, which for these purposes at least, is generally regarded as analogous to section 504. *See Silva v. Crain*, 169 F.3d 608, 610–11 (9th Cir.1999). Although this Circuit has not yet ruled that California's

not decide in this opinion whether the district court's understanding concerning the relief OCR may provide is correct.

**7.** As the district court found the action to be barred by the statute of limitations, the second ground for defendant's motion to dismiss—whether Ms. Daviton–Sciandra stated a claim for relief—was not reached. We leave this issue for the district court's consideration on remand.

personal injury statute of limitations applies to section 504 claims, other circuits have held that the forum state's personal injury limitations period applies to such a claim. *See, e.g., Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 933 (7th Cir. 1993); *Hickey v. Irving Independent School District,* 976 F.2d 980, 982–83 (5th Cir.1992); *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992). As plaintiffs conceded in the district court that a one-year statute of limitations applies here, however, we do not reach the issue.[8]

### A. *California's Doctrine of Equitable Tolling*

■ California's current doctrine of equitable tolling begins with *Elkins v. Derby,* 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81 (1974) (in bank). The California Supreme Court simplified the rationale for the doctrine, focusing foremost on the purpose of statutes of limitation—to prevent assertion of stale claims against a defendant. In *Elkins,* the court held that the statute of limitations against an employer was tolled while an employee pursued his workers' compensation claims arising out of the same accident. Even when the injured person was not required to exhaust his administrative remedies, the court explained, a line of recent California cases "points toward the principle that . . . if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.'" *Id.* at 414, 115 Cal. Rptr. 641, 525 P.2d 81 (internal citation omitted). "[P]ersuasive policy considerations" supported the holding, particularly the court's belief that suspending the running of the limitations period in this situation "will not frustrate achievement of the limitations statute's primary purpose." *Id.* at 417, 115 Cal.Rptr. 641, 525 P.2d 81. As Justice Holmes had stated, statutes of limitation served to prevent "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* (quoting *Telegraphers v. Ry. Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)).

The *Elkins* court pointed out the liberal application of tolling rules "or their functional equivalents" to cases in which a plaintiff had duly notified the defendant. *Id.* at 418, 115 Cal.Rptr. 641, 525 P.2d 81. Furthermore, the court refused to "overlook the inequity that a duplicative filing requirement might work upon an injured party," declaring such proceedings "surely inefficient, awkward and laborious." *Id.* at 419–20, 115 Cal.Rptr. 641, 525 P.2d 81. Moreover, "[i]f, in order to avert loss of his rights, an injured party is forced to initiate proceedings with both the compensation board and a superior court, he brings onerous burdens upon himself, his employer, and the already overtaxed judicial system." *Id.* at 420, 115 Cal.Rptr. 641, 525 P.2d 81. Striking a balance between protecting an injured employee's judicial remedy and eliminating unfair prejudice to his employer, the court reversed the judgment and remanded the case for further proceedings. "Procedural rules," the court declared, "should engender smooth and functional adjudication." *Id.*

■ The California Supreme Court based its decision on a simple principle: A "procedural practice is neither sacred nor immutable . . . [and] must be able to with-

---

**8.** Although we need not decide the issue, we do note that, with rare exceptions, the district courts that have addressed the issue have adopted this view, applying the state's one-year personal injury limitations period to disability discrimination claims. *See, e.g., Independent Housing Services of San Francisco v. Fillmore Center Associates,* 840 F.Supp. 1328, 1345 (N.D.Cal.1993); *Alberti v. City and County of San Francisco Sheriff's Dep't,* 32 F.Supp.2d 1164, 1172 (N.D.Cal.1998); and cases cited in *Kramer v. Regents of the University of California,* 81 F.Supp.2d 972, 975–76 (N.D.Cal.1999). The district court in *Kramer,* however, concluded that the three-year statute of limitations that applies to statute-based claims, Code Civ. Proc. sections 312, 338, should apply to claims under the Unruh Act.

stand the charge that it is inequitable, burdensome or dysfunctional." *Id.* Where, as in the instant case, the complaint alleges that the administrative and judicial claims each involve the same facts and name the same defendant, we find that allowing plaintiffs to offer evidence to support application of California's equitable tolling doctrine in no way compromises the principal rationale for statutes of limitation. Indeed, when invoking the equitable tolling doctrine would eliminate duplicative proceedings, as here, both the law and common sense counsel its application.

Since *Elkins,* the California courts have had numerous occasions to invoke and apply the equitable tolling doctrine.[9] In *Addison v. State of California,* 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941 (1978), the California Supreme Court held that the statute of limitations for filing a governmental tort claim was equitably tolled when plaintiff initially filed his action in federal court. The purpose of the doctrine, the court observed, "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Id.* at 316, 146 Cal.Rptr. 224, 578 P.2d 941. Recognizing the principal goal of statutes of limitation as preventing the assertion of stale claims, the court affirmed the "general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." *Id.* at 317, 146 Cal.Rptr. 224, 578 P.2d 941 (citations omitted).

In sum, these requirements control: timely notice and absence of prejudice to defendant and plaintiff's good faith and reasonable conduct. *Id.* at 319, 146 Cal. Rptr. 224, 578 P.2d 941. Notwithstanding plaintiffs' ability to pursue claims under federal and state law based on the same set of facts simultaneously, the court saw no policy reason to require plaintiffs to initiate and maintain duplicative proceedings. *Id.* at 319, 146 Cal.Rptr. 224, 578 P.2d 941. Rather, plaintiffs duly filed their claims with the relevant state agencies and filed their original federal suit within the statutory period; their state action asserted the same claims raised in the federal case. Like the Hospital here, "[d]efendants were informed at all times of the nature of plaintiffs' claims." *Id.* at 321, 146 Cal.Rptr. 224, 578 P.2d 941.

Several years after *Addison,* the court of appeal in *Collier v. City of Pasadena,* 142 Cal.App.3d 917, 191 Cal.Rptr. 681 (1983), explained the equitable tolling doctrine in greater detail, becoming as a result the most oft-quoted formulation of California's law. *See, e.g., Structural Steel Fabricators, Inc. v. City of Orange,* 40 Cal.App.4th 459, 464–65, 46 Cal.Rptr.2d 867 (1995) ("The court in *Collier v. City of Pasadena* . . . defined [the equitable tolling] elements[.]"); *Downs v. Department of Water and Power,* 58 Cal.App.4th 1093, 1100–1101, 68 Cal.Rptr.2d 590 (1997) (same). In *Collier,* a City firefighter filed a workers' compensation claim within two and one-half months of a job-related injury. He subsequently filed a disability pension application based on the same injury, but not within the six month deadline. Analyzing whether Collier's claims were time-barred, the court described the "new" equitable tolling doctrine's "simpler rationale: a plaintiff should not be barred by a statute of limitations unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed." *Id.* at 923, 191 Cal.Rptr. 681. The court quoted *Addison:* "Justice Richardson's words . . . have created a definitive three-pronged test for invocation of this doctrine." *Id.* at 924, 191 Cal.Rptr. 681. Specifically, tolling is appropriate where the record shows "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plain-

---

9. In fact, the California Supreme Court has even raised the issue *sua sponte. See Jones v.* *Tracy School District,* 27 Cal.3d 99, 104–05, 165 Cal.Rptr. 100, 611 P.2d 441 (1980).

tiff in filing the second claim." *Id.* The court of appeal noted the California Supreme Court's emphasis on the second requirement—lack of prejudice in evidence-gathering. *Id.* at 924 n. 5, 191 Cal.Rptr. 681.

The court of appeal then elaborated on the three elements. The first, timely notice, requires that plaintiff have filed the first claim within the statutory period. That claim must "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Id.* at 924, 191 Cal.Rptr. 681. Typically, both claims name the same defendant. *Id.* Here, no one contends that the Davitons' OCR complaint was not timely. The respondent and defendant, moreover, were the same: Columbia/HCA Healthcare Corporation dba San Leandro Hospital.

To satisfy the second requirement "the facts of the two claims [should] be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Id.* at 925, 191 Cal.Rptr. 681. They need not be absolutely identical:

> So long as the two claims are based on essentially the same set of facts timely investigation of the first claim should put the defendant in position to appropriately defend the second. Once he is in that position the defendant is *adequately protected* from stale claims and deteriorated evidence. In terms of the underlying policies of the statutes of limitation, *it is irrelevant whether those two claims are alternative or parallel, consistent or inconsistent, compatible or incompatible.*

*Id.* at 925–26, 191 Cal.Rptr. 681 (emphasis added). There appears little doubt at this stage that the Davitons complied with this second requirement as well—they complained to the OCR about the identical incident that gave rise to their district court action. The defendant in each forum, moreover, was the same. The Hospital was on notice that the Davitons alleged that the Hospital's failure to provide a suitable sign language interpreter violated their rights under the Rehabilitation Act. From the date it was notified of the OCR complaint, then, the Hospital could interview witnesses, review documents, and generally gather any evidence it needed to defend itself against the discrimination claim.

Good faith and reasonable conduct, the third requirement, was not as well defined in the case law. Perhaps if a plaintiff simply allowed the statute on his second claim nearly to run or "deliberately misled the defendant into believing the second claim would not be filed," then a court might find bad faith. *Id.* at 926, 191 Cal.Rptr. 681. The Hospital has not asserted that this third requirement applies. And the complaint indicates that the Davitons filed an administrative complaint over seven months of their experience at the Hospital. OCR evidently investigated and notified the parties of its findings over nineteen months later. If the statute of limitations were tolled during this period, plaintiffs then had six months within which to file their lawsuit, a deadline they met. At this procedural stage, the district court lacks any basis for determining that the Davitons did not satisfy this requirement.[10]

Policy considerations, the *Collier* court added, favor the doctrine of equitable tolling. For one, it may aid in reducing public dispute resolution costs. The City was spared the burden of a duplicative investigation, perhaps resulting in a "briefer and less expensive [retirement board hearing] since board members will have the benefit of the compensation board's evaluation of the evidence relevant to both claims." *Id.* at 934, 191 Cal.Rptr. 681. Although the Hospital is not a public entity, the equita-

---

**10.** If the Hospital has a basis for contending it has been prejudiced or that the Davitons acted in bad faith, which it has not asserted previously, the district court will have the opportunity to assess any supporting evidence in the course of applying the mandatory three-part test.

ble tolling doctrine still affords potential benefits. Permitting plaintiffs to proceed administratively first may well avoid a duplicative investigation and could facilitate either settlement of the lawsuit or more streamlined litigation as a result of the OCR investigation and proceeding.

In *Collier*, the court found that plaintiff had satisfied the three-prong test for equitable tolling. First, when he filed his workers' compensation claim alleging an employment-related disability, he satisfied the timely notice requirement. *Id.* at 927, 191 Cal.Rptr. 681. The "essential factual elements of the two 'causes of action' [were] nearly identical," so that the City was not prejudiced in gathering evidence, thus satisfying the second prong. *Id.* at 929, 191 Cal.Rptr. 681. Third, the court found that Collier and his attorneys "conducted themselves reasonably and in good faith." *Id.* at 933, 191 Cal.Rptr. 681.

As in *Collier*, the Davitons' complaint gives every indication that they can satisfy the three requirements for equitable tolling under California law. The underlying policy considerations, moreover, support giving them the chance to establish that the doctrine applies.

B. *The Ninth Circuit's Application of California's Equitable Tolling Doctrine*

Until *Fobbs*, we applied California's equitable tolling doctrine quite faithfully. For example, in *Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.*, 707 F.2d 1030 (1983), the district court decided that California's equitable tolling doctrine did not apply to extend the four-year limitations period on the Union's claim for damages and an accounting pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to enforce the collective bargaining agreement. We noted that when borrowing a state statute of limitations, federal courts apply the state's tolling law as well, if it is not inconsistent with federal law. *Id.* at 1033. We then quoted the *Addison* formulation of the equitable tolling doctrine, permitting tolling if defendant had received

timely notice and suffered no prejudice, and where plaintiff's conduct was reasonable and in good faith. *Id.* California courts did not require "that the causes of action be identical or even that damages be sought in both actions in order that requisite notice be given." *Id.* at 1034 (citing *Elkins*, 12 Cal.3d at 415, 115 Cal. Rptr. 641, 525 P.2d 81). No specific type of notice is required, moreover, as long as defendant has adequate opportunity to gather and preserve evidence, the very purpose of statutes of limitation. *Id.* at 1034–35. We cautioned that application of the equitable tolling doctrine must not frustrate national labor-management policy, but found that in *Retail Clerks*, the policy was "fostered by having the NLRB attempt to resolve an issue before a party resorts to a section 301 action." *Id.* at 1033.

In this case, the national policy of ending the myriad forms of discrimination against individuals with disabilities is similarly advanced by not discouraging the OCR's attempt to resolve the Davitons' complaint before they resort to legal action against the Hospital. Allowing plaintiffs to proceed after the OCR investigates may well enhance the prospect of resolving their complaint short of litigation. Even if the Davitons decide to initiate a lawsuit, all parties and the court should benefit from the OCR's investigatory efforts. Applying the equitable tolling doctrine in this situation further relieves the Hospital of responding to two simultaneous and largely duplicative inquiries while ensuring that it has received prompt and proper notice of the gravamen of plaintiffs' claim(s). Plaintiffs, meanwhile, save the initial expense of conducting the same discovery while maintaining their right and ability to obtain a ruling on the merits. The court, the parties, and the public benefit by a more focused pre-trial proceeding and trial, if necessary. As in *Retail Clerks*, our conclusion that the Davitons should have the opportunity to show that the equitable tolling doctrine should apply is not inconsistent with federal policy.

In *Cervantes v. City of San Diego,* 5 F.3d 1273, 1276 (9th Cir.1993), we acknowledged that the analysis of California's equitable tolling doctrine, particularly on the issue of prejudice to defendant, generally required consideration of matters outside the pleadings. As a result, only in the rare case could the inquiry proceed at the pleading stage. We took note of California courts' liberal application of the equitable tolling rules: "the doctrine of equitable tolling rests upon the reasoning that a claim should not be barred 'unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed.'" *Id.* at 1275 (quoting *Collier,* 142 Cal.App.3d at 923, 191 Cal.Rptr. 681). The doctrine "focuses on the effect of the prior claim in warning the defendants in the subsequent claim of the need to prepare a defense." *Id.* Upon satisfying the three-pronged test, a plaintiff should be relieved from the limitations bar.

California's doctrine does not include, as indicated in *Fobbs,* a "'threshold' inquiry determinable as a matter of law." *Id.* at 1276. "Similarity" is a legal *conclusion* that follows from the mandatory application of the "equitable tolling test." *Id.* To evaluate prejudice to the defendant, the court engages in a fact-specific and evidence-bound inquiry of the contentions and evidence relevant to each claim. "As such, 'similarity' is not easily resolved as a matter of law, without receiving evidence." *Id.*

Indeed, all three factors require a practical inquiry, we explained in *Cervantes.* "At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstances of the prior claim: parties involved, issues raised, evidence considered, and discovery conducted." *Id.* With respect to the notice factor, although it usually requires that the defendant in each claim be the same, the requirement may be satisfied "where a defendant in the second claim was alerted to the need to gather and preserve evidence by the first claim *even if not nominally a party to that initial proceeding.*" *Id.* at 1276 n. 3 (emphasis added). Thus,

in *Cervantes,* despite the fact that several defendants were not even parties to Cervantes' administrative proceedings, due to their "close affiliations with the City," they could be considered to be in "evidentiary privity" which would "justify overlooking their nominal absence from the Civil Service proceedings." *Id.*

The main point, we stressed, was that the complaint was "more than sufficient" to withstand a Rule 12(b)(6) challenge. Plaintiff pursued "appropriate efforts" to mitigate the major injury—loss of employment—alleged in his complaint. He alleged that he timely initiated the administrative proceeding and timely filed his federal court action after the administrative process ended. He suggested, furthermore, "that defending the prior proceedings would have necessarily involved the collection of evidence to rebut his claims that the charges against him were contrived; this is also the type of evidence needed to defend against his federal claim." *Id.* at 1277. As a matter of law, no allegation indicated any bad faith or unreasonable conduct on plaintiff's part. The court concluded that Cervantes should be allowed to offer evidence to support his equitable tolling argument and reversed and remanded for further proceedings. *Id.*

Less than a year later, the court in *Fobbs v. Holy Cross Health System Corporation* omitted any reference to *Cervantes* when it addressed California's equitable tolling doctrine. Dr. Fobbs had sued defendant St. Agnes Hospital and Medical Center, individual physicians on staff, and certain peer review committees at the hospital for summarily suspending his staff privileges. Dr. Fobbs asserted civil rights and antitrust claims; the district court found his claim under 42 U.S.C. section 1981 time-barred.

Dr. Fobbs argued he was entitled to the benefit of California's equitable tolling doctrine on his section 1981 claim during the period when the OCR investigated his

claim.[11] The panel found that although Dr. Fobbs "arguably met the three core elements required under California law[,]" he had failed to meet two "threshold requirements." *Id.* at 1446.

The first threshold requirement identified in *Fobbs* is simply the standard condition we always impose when we import state "procedural" law: *i.e.,* we will adopt the state law insofar as state law doctrines are "not ... inconsistent with federal policy" underlying the substantive federal law. *Id.* at 1445 (internal citations and quotations omitted). This first requirement is not an issue in this case. No one here disputes that the equitable tolling rules of California, together with the state's statutes of limitation, can be applied without intruding upon any such federal policy.

The second "threshold matter" set forth in *Fobbs* is the point at which we diverged from the state's doctrine. California has long refused to apply the equitable tolling doctrine to toll the statute of limitations on a claim for a distinct wrong that was *not* the basis of the earlier proceeding. For example, in *Aerojet General Corporation v. Superior Court,* 177 Cal.App.3d 950, 223 Cal.Rptr. 249 (1986), one of the plaintiffs received workers' compensation benefits for an injury and then filed a lawsuit not only for personal injury, but for fraudulent concealment. The court declined to toll the limitations period on the fraudulent concealment cause of action because it involved a wrong distinctly different from plaintiff's workplace injury (for which workers' compensation was the exclusive remedy in any event). The court reasonably concluded that filing the workers' compensation claim did not notify defendants of the nature "or the imminence" of the fraudulent concealment cause of action, and on that basis, declined to toll the statute of limitations.

In requiring as a threshold matter for purposes of equitable tolling that a plaintiff seek the same remedies in each proceeding dealing with the same wrong, *Fobbs* imposed more stringent requirements than apply under California law. What's more, the rationale for requiring that a plaintiff's claim be based on the same wrong does not warrant an extension to require the same remedy as well.

■ As the courts have explained for years, the equitable tolling doctrine requires that the same wrong serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice. In this way, defendant is protected from stale claims. Once notified that a plaintiff seeks a remedy for a certain wrong, defendant can gather evidence, interview witnesses, and locate documents.

While it is probably true that knowing what remedy plaintiff is seeking will affect how defendant prepares to defend itself, once defendant is aware of the wrong, the purpose of the statute of limitations has been served. Refusing to apply the equitable tolling doctrine because plaintiff seeks different remedies is not justified under California law. Although the district court, not surprisingly, read *Fobbs* as requiring that plaintiffs seek identical remedies prior to applying or as part of California's equitable tolling doctrine, the state's equitable tolling rules do not support this interpretation, and we reject *Fobbs'* suggestion to the contrary.

Here, the Davitons' complaint shows that they are able to satisfy all the requirements for equitable tolling under California law. Their OCR complaint and at least one of their claims assert violations of the identical statute, section 504. With notice of the OCR complaint, the Hospital

11. He also argued that the limitations period was tolled during the pendency of the internal hospital administrative proceedings "because during that period [he was] legally prevented from taking any action to protect his rights." 29 F.3d at 1444. Under *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), this argument fails. As the Supreme Court explained, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." 29 F.3d at 1446 (quoting *Delaware State College,* 449 U.S. at 261, 101 S.Ct. 498).

appears to have received adequate opportunity to gather relevant evidence and contact witnesses in order to prepare its defense. Defendant has thus far asserted no prejudice nor has it even hinted that plaintiffs acted in bad faith. The fact that the OCR's "remedial action" does not expressly include compensatory damages, moreover, is not a factor in applying California's doctrine of equitable tolling nor is it relevant to the rationale for the doctrine. Plaintiffs are entitled, as was plaintiff in *Cervantes,* to allege facts and offer evidence supporting application of the tolling doctrine. Only then will the district court be in a position to engage in the practical fact-specific and evidence-bound inquiry required under California law.

We therefore REVERSE and REMAND for additional proceedings consistent with this opinion.